IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Civil Action No. 1:20-cv-01632-DDD-TPO

ROOFTOP RESTORATION & EXTERIORS, INC.; and
ROOFTOP RESTORATION, INC.,

     Plaintiffs,

v.

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,

     Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

    This case involves a dispute over property-insurance benefits. Plaintiff Rooftop Restoration & Exteriors, Inc. ("Rooftop R&E") entered a contract (the "Construction Contract") to repair the hail-damaged roof of non-party California Expanded Metals Products Company ("CEMCO"). In the contract, CEMCO also assigned its property-insurance claim with Defendant Travelers Property Casualty Company of America ("Travelers") to Plaintiff Rooftop Restoration, Inc. ("Rooftop Restoration"). The plaintiffs contend the assignment to Rooftop Restoration was a scrivener's error and that the contracting parties' actual intent was to assign the claim to Rooftop R&E. They request reformation of the Construction Contract to reflect that Rooftop R&E is CEMCO's assignee. A bench trial on the plaintiffs' claim for reformation of contract was held on January 21, 2025. Pursuant to Federal Rule of Civil Procedure 52(a)(1), I make the following findings of fact and conclusions of law. The plaintiffs' request for reformation is granted as set forth below.

- 1 -

# FINDINGS OF FACT[1]

## I. Parties' Stipulated Facts

I adopt the following findings of fact to which the parties have stipulated. *See* Doc. 160.

**1.** CEMCO purchased insurance from Travelers.

**2.** Travelers issued policy #Y22J630-4914R316 (the "Policy") to CEMCO.

**3.** The Policy provides coverage for CEMCO's property at 480 and 490 Osage, Denver, Colorado 80204 (the "Property").

**4.** On or about May 8, 2017, a hailstorm hit the Property causing property damage. Ex. 555 at 15:15-16:21.

**5.** The Construction Contract sets forth the following:

    **a.** The introductory paragraph of the contract states that the contract is entered into by CEMCO

> and ROOFTOP RESTORATION and EXTERIORS, INC. (hereinafter referred to as "Contractor") located at 18662 Stone Gate Dr, Morrison, Colorado 80465.

Ex. 16 at 1 (capitalization in original).

    **b.** Paragraph 1 contains a description of the services to be provided to CEMCO. *Id.* at 1-3.

    **c.** Paragraph 2 of the contract states that

> Contractor will provide all services, materials and labor to do the above described services at the property of Customer.

*Id.* at 3.

---

[1] To the extent that any conclusions of law below contain findings of fact, they are incorporated by reference in this section as findings of fact.

    **d.** Paragraph 6 states that

> Payment shall be made to ROOFTOP RESTORATION & EXTERIORS, INC.

*Id.* (capitalization in original).

    **e.** Paragraph 17 states

> Customer, by signing below, further agrees and does hereby grant Rooftop Restoration, Inc., a full and sufficient power of attorney to initiate litigation, demand appraisal or act in any other capacity that relates to a dispute for damages caused by insured loss . . . .

*Id.* at 5.

    **f.** Paragraph 18 states that

> Assignor has a claim for damages at 2400 west 7th Ave subject to the insurance claim # E9H5180001H with policy # Y22J6304914R316 Customer's insurance carrier (hereinafter referred to as "Insurance Claim"). This claim generally is for Wind & Hail damage(s) to the above referenced property.

*Id.* (punctuation and capitalization in original).

    **g.** Paragraph 18 of the contract states in the second paragraph that

> Assignor has entered into a contract with Rooftop Restoration, Inc., (hereinafter referred to as "Assignee") . . . .

*Id.*

    **h.** Paragraph 18 was initialed by Michael Wu, the CFO of CEMCO at the time. *Id.*

    **i.** Paragraph 20 permits CEMCO to cancel the contract. It states that

> Cancellation must be in writing and delivered to Rooftop Restoration & Exteriors Inc. at 18662 Stone Gate Dr, Morrison, CO 80465.

*Id.*

 **j.** The signature block for the contract includes "California Expanded Metal Products" as the Customer and "Rooftop Restoration, Inc." as the Contractor. *Id.* at 6.

 **k.** Mr. Wu signed the contract for CEMCO. *Id.*

 **l.** Mr. Wu also initialed each page of the contract. *Id.* at 1-6.

**6.** On or about April 29, 2020, the parties made two handwritten edits to the Construction Contract:

 **a.** In Paragraph 1, the parties struck through the term "AOC" and replaced it with "AOB." *Id.* at 19.

 **b.** In Paragraph 18, the parties struck through the address for the property that was contained in the contract, 2400 west 7th, and replaced it with the address of the Property, 480 and 490 Osage St., Denver. *Id.* at 23.

 **c.** Jeff Shaver initialed both handwritten changes and dated them as of April 29, 2020. *Id.* at 19, 23.

## II. Court's Factual Findings

I make the following additional findings of fact based on the evidence presented at the bench trial.[2]

**7.** Mr. Shaver has been the operations manager of CEMCO's Denver facility since July 2017. Ex. 555 at 14:10-16. Prior to that he was the assistant operations manager for five years. *Id.* at 14:17-19.

---

[2] To the extent the parties objected to admission of any of the exhibits and testimony cited below, those objections are overruled. I have ignored any evidence that is inadmissible, and I have not considered any of the evidence cited below for any improper purpose. *See Williams v. Illinois*, 567 U.S. 50, 69-70 (2012) (citing *Harris v. Rivera*, 454 U.S. 339, 346 (1981)); *Tosco Corp. v. Koch Indus, Inc.*, 216 F.3d 886, 896 (10th Cir. 2000).

**8.** In early July 2017, Mr. Shaver was approached by a man named Brian who worked for "Rooftop." Ex. 555 at 102:13-103:10. Brian referred Mr. Shaver to Phil Coutu of "Rooftop." *Id.* at 104:7-10. At that time, Mr. Shaver did not know there were multiple "Rooftop" entities. *Id.* at 103:19-104:6.

**9.** Philip Coutu is the owner of Rooftop Restoration and the president and manager of Rooftop R&E. Doc. 167 at 10:23-11:3, 11:18-23. Mr. Coutu operates multiple entities that have some variation of the "Rooftop" name. *Id.* at 10:23-11:23. For example, he also owns Rooftop Roofing, Inc. *Id.*

**10.** Mr. Coutu met with CEMCO, and afterward he drafted the Construction Contract. Doc. 167 at 41:10-24. He went through the contract with Mr. Shaver, who passed it on to Mr. Wu. *Id.* at 18:10-18, 44:17-21.

**11.** Prior to executing the Construction Contract, CEMCO and Mr. Coutu had an agreement that "Rooftop" would repair CEMCO's roof, the payment for the repairs would be the proceeds of CEMCO's insurance claim with Travelers plus CEMCO's deductible, and "Rooftop" would handle all the communications and negotiations with Travelers regarding the insurance claim. Ex. 555 at 106:7-25, 107:21-108:8 (when Construction Contract was signed, CEMCO did not know what the actual cost to replace the roof was going to be; Mr. Coutu told CEMCO that Travelers' initial estimate was "not nearly enough," but "that's the way the process[] works"); *id.* at 107:1-14 (prior to signing Construction Contract, CEMCO understood that Rooftop "would handle everything from here moving forward once the contract was signed" and would negotiate settlement of CEMCO's insurance claim with Travelers); *id.* at 110:20-111:3 (by signing Construction Contract, CEMCO intended for Rooftop to act on CEMCO's behalf in resolving the insurance claim with Travelers); *id.* at 101:17-102:8 (after Construction Contract was signed,

- 5 -

Rooftop "handled 100 percent of the stuff moving forward in terms of the roofing and what was happening with the roof project" and "took care of everything moving forward as far as the roof project goes"); *id.* at 57:9-23 (CEMCO did not expect or want to keep any of the money that Travelers paid in settlement of the insurance claim; "The money that we received for this project was to be passed along to Rooftop.").

12. CEMCO's and Mr. Coutu's agreement that "Rooftop" would be paid the proceeds of the insurance claim and that "Rooftop" would "handle everything moving forward" with respect to communications and negotiations with Travelers was memorialized in the Construction Contract's price, power-of-attorney, and assignment-of-claim provisions, Ex. 16 at 1, 3, 5, but Mr. Coutu did not specifically discuss the written power-of-attorney and assignment-of-claim clauses with CEMCO before Mr. Wu signed the contract, Ex. 555 at 109:10-110:14.

13. CEMCO and Mr. Coutu signed the Construction Contract on July 28, 2017. Ex. 16 at 1, 6. At the time the contract was executed, neither CEMCO nor Mr. Coutu noticed that the contract referred to two different "Rooftop" entities. Ex. 17 ¶ 6; Doc. 167 at 17:12-18:13, 19:11-21. Neither CEMCO nor Mr. Coutu noticed that the contract named two different "Rooftop" entities until after this lawsuit was filed. Ex. 555 at 65:14-22, 70:7-14, 103:19-24, 105:6-11, 114:6-13, 141:16-20; Doc. 167 at 24:25-25:1, 27:15-28:7, 35:2-7, 65:14-17, 69:8-20.

14. It is evident from the face of the Construction Contract that the contract contains a mistake. The first sentence of the contract states that the contract is between CEMCO and Rooftop R&E and defines Rooftop R&E as "Contractor." Ex. 16 at 1. Paragraph 1 of the contract indicates the "POA & AOC in Paragraph 17 & 18" would be to "the contractor." *Id.* at 1. The price provision indicates that "Contractor" will negotiate "the total value of the [insurance] claim" with Travelers, and

states that CEMCO gives "contractor" an "assignment to the extent of the contract price." *Id.* at 3. But the power-of-attorney and assignment-of-claim provisions that give authority to negotiate settlement of the insurance claim and assign the right to recover the claim proceeds name Rooftop Restoration as the "Assignee." *Id.* at 5. And the signature line of the contract identifies the "Contractor" as Rooftop Restoration. The Construction Contract is therefore internally inconsistent, as it identifies two different entities as the "Contractor." The contract's provisions also do not make sense if the "Contractor" and "Assignee" are two different entities. The most logical inference is that the contracting parties intended that only one "Rooftop" entity be named throughout the contract. Neither the plaintiffs nor Travelers have identified any reason why one might intend for the "Contractor" and "Assignee" in a contract like the Construction Contract to be two different entities or why such an arrangement might be beneficial.

**15.** When Mr. Coutu drafted the Construction Contract, he intended the entire contract to be between CEMCO and Rooftop R&E. Doc. 167 at 13:18-19:21, 41:25-42:3. Rooftop R&E was a newer entity at the time, and this was the first contract he had drafted for Rooftop R&E that involved a power of attorney and assignment of claim. *Id.* at 14:12-21, 42:4-8. He used a prior Rooftop Restoration contract as a template and "changed it over to Rooftop Restoration & Exteriors." *Id.* at 41:25-42:12. He did not notice that Paragraphs 17 and 18 and the signature block referred to Rooftop Restoration, and he inadvertently failed to update the name of the contracting entity in those parts of the contract. *Id.* at 17:12-18:13, 19:11-21, 43:12-15. Mr. Coutu did not intend for Rooftop Restoration to be named in the contract at all. *Id.* at 13:18-19:21. I found Mr. Coutu's testimony credible.

16. Mr. Coutu's testimony that he intended Rooftop R&E to be the only "Rooftop" entity named in the contract is corroborated by the contract itself, which identifies the contracting parties as CEMCO and Rooftop R&E in the very first line. Ex. 16 at 1. When drafting a contract from a template, that is the place one would be most likely to update carefully to ensure the contract correctly identifies the contracting parties. Mr. Coutu's course of conduct after the contract was signed also corroborates that he intended and understood the contracting entity to be Rooftop R&E, as that is the entity named on the invoice that he sent to CEMCO. Ex. 18.

17. CEMCO did not know that there were multiple "Rooftop" entities until after this lawsuit was filed. Ex. 555 at 65:14-22, 70:7-14, 103:19-24, 105:6-11, 114:6-13, 141:16-20. When Mr. Shaver spoke with Mr. Coutu, Mr. Coutu did not ever distinguish between Rooftop R&E and Rooftop Restoration. *Id.* at 105:1-5. CEMCO "just knew Rooftop as Rooftop." *Id.* at 105:6-11. CEMCO has never contested or had any concerns about the validity of the Construction Contract. *Id.* at 63:14-17; Ex. 556 at 31:1-32:14.

18. This lawsuit was filed on May 5, 2020. Doc. 7. Travelers first raised the issue of two different "Rooftop" entities being named in the Construction Contract in the fall of 2020, and that is when Mr. Coutu first learned of his drafting error. Doc. 167 at 27:15-28:7, 35:2-7, 65:14-17, 69:11-16.

19. Scott Yessner is CEMCO's current CFO and has held that position since March 2020. Ex. 556 at 6:4-17.

20. On November 20, 2020, Mr. Coutu emailed Mr. Yessner and Mr. Shaver to request that CEMCO execute an addendum to the

Construction Contract. Ex. 31 at 4. The proposed addendum stated that CEMCO and Rooftop R&E

> mutually agree that the Construction Contract is hereby deemed reformed to correct the scrivener's error in paragraphs 17 and 18 in order to reflect the parties' true intent at the time of entering into the contract [that] Paragraphs 17 and 18 in the Construction Contract . . . provide Rooftop Restoration and Exteriors, Inc.—not Rooftop Restoration, Inc.—with the power of attorney and the assignment of claim.

Ex. 98. Mr. Coutu characterized the references to Rooftop Restoration in the Construction Contract as "nothing more than a typo." Ex. 31 at 4. Mr. Yessner ultimately responded that "Cemco is not executing any additional documents or granting more authority. We would like [Travelers and Rooftop] to resolve the matter as agreed and reasonable." *Id.* at 2.

**21.** The evidence clearly and unequivocally shows that:

**a.** Prior to executing the Construction Contract, CEMCO and Mr. Coutu had an agreement that "Rooftop" would repair CEMCO's roof, payment would be the proceeds of CEMCO's insurance claim with Travelers plus CEMCO's deductible, and "Rooftop" would handle all the communications and negotiations with Travelers regarding the insurance claim. That agreement was memorialized in the Construction Contract's price, power-of-attorney, and assignment-of-claim provisions, which do not make sense if the "Contractor" and "Assignee" are two different entities. The naming of two different "Rooftop" entities in the contract was a mistake of a clerical nature.

**b.** CEMCO and Mr. Coutu had the same erroneous conception that the Construction Contract was entered between CEMCO and a single "Rooftop" entity. At the time the contract was executed, CEMCO did not know there were multiple "Rooftop" entities, and

- 9 -

Mr. Coutu believed he had drafted the contract to name only Rooftop R&E.

**c.** CEMCO was indifferent as to the specific "Rooftop" entity it contracted with; CEMCO's intent was to contract with "Rooftop," and CEMCO deferred to Mr. Coutu to identify the precise legal name of "Rooftop" in the contract. Mr. Coutu's intent was to name Rooftop R&E as the contracting "Rooftop" entity.

## CONCLUSIONS OF LAW[3]

### I. Applicable Law

**1.** Because subject-matter jurisdiction in this action is based on diversity of citizenship under 28 U.S.C. § 1332(a), I must apply Colorado substantive law to the plaintiffs' underlying claims and federal law to procedural issues. *Nat'l Union Fire Ins. Co. of Pittsburgh v. Dish Network, LLC*, 17 F.4th 22, 29 (10th Cir. 2021).

**2.** Under Colorado law, reformation of a contract "is generally permitted where . . . the evidence clearly and unequivocally shows that [the contract] does not express the true intent or agreement of the parties." *Atchison v. City of Englewood*, 568 P.2d 13, 17 (Colo. 1977), *superseded on other grounds by* Colo. Rev. Stat. § 38-30-167. "Reformation of a written instrument is appropriate only when the instrument does not represent the true agreement of the parties and the purpose of reformation is to give effect to the parties' actual intentions." *Md. Cas. Co. v. Buckeye Gas Prods. Co.*, 797 P.2d 11, 13 (Colo. 1990). Reformation is an equitable remedy. *Atchison*, 568 P.2d at 19.

---

[3] To the extent that any findings of fact above are deemed to be conclusions of law, they are incorporated by reference in this section as conclusions of law.

**3.** The burden of proof is on the party seeking reformation. *Segelke v. Kilmer*, 360 P.2d 423, 426 (Colo. 1961). "The evidence must clearly and unequivocally show that reformation is appropriate under the circumstances." *Md. Cas. Co.*, 797 P.2d at 13. A mere preponderance of the evidence is not sufficient to justify reformation. *Hooper v. Capitol Life Ins. Co.*, 20 P.2d 1011, 1012 (Colo. 1933). But if the evidence meets the required standard of proof, the contract "may be and should be reformed." *Id.* The required quantum of proof to permit reformation may be satisfied even when there is conflicting evidence or testimony; it is in the province of the trial court to judge the credibility of witnesses and resolve conflicting evidence. *Eisele v. Barnhart*, 55 P.2d 321, 323-25 (Colo. 1936).

**4.** A contract may be reformed where one party to the contract made a unilateral mistake and the other party engaged in fraud, bad faith, or wrongful conduct. *Smith v. Whitlow*, 268 P.2d 1031, 1034-35 (Colo. 1954); *see also Tatonka Cap. Corp. v. Connelly*, 390 F. Supp. 3d 1289, 1299-1302 (D. Colo. 2019) (one party's unilateral mistake can warrant reformation if other party was aware of the mistake at time of contract formation). A contract will not be reformed based on a party's unilateral mistake that was due to a failure to exercise reasonable diligence. *Whitlow*, 268 P.2d at 1034-35; *accord Poly Trucking, Inc. v. Concentra Health Servs.*, 93 P.3d 561 (Colo. App. 2004).

**5.** A contract may also be reformed where the contracting parties made a mutual mistake and the written agreement does not correctly state the parties' actual intentions. *Md. Cas. Co.*, 797 P.2d at 13. A mutual mistake requires that both parties "labor under the same erroneous conception in respect to the terms and conditions of the instrument." *Id.* "An essential prerequisite to a court's power to reform a contract on the ground of mutual mistake is the existence of a prior agreement that

- 11 -

represents the actual expectations of the parties and provides the basis upon which a court orders reformation." *Id.* The intentions and expectations of the parties and the existence or nonexistence of a mutual mistake are questions of fact. *Id.*

**6.** One form of mutual mistake is a "scrivener's error," which occurs when an error by the contract drafter causes a variance between the written instrument and the true agreement of the parties. *Id.*; *Atchison*, 568 P.2d at 17; *Alexander Dawson, Inc. v. Sage Creek Canyon Co.*, 546 P.2d 969, 971 (Colo. App. 1976) (citing *Gullion v. Plymale*, 450 P.2d 650 (Colo. 1969)). Reformation based on a scrivener's error is appropriate even if the scrivener is a party to the contract. *Alexander Dawson*, 546 P.2d at 971.

**7.** The doctrine of mutual mistake applies "where both parties are mistaken as to the same basic assumption," but "[t]heir mistakes need not be, and often they will not be, identical." *Ranch O, LLC v. Colo. Cattlemen's Agric. Land Tr.*, 361 P.3d 1063, 1066 (Colo. App. 2015) (quoting *Restatement (Second) of Contracts* § 152 cmt. h). "Accordingly, parties can be mutually mistaken regarding a contracting party's identity even when their mistakes on that issue are not identical." *Id.* at 1066-67 (citing *Gooslin v. B–Affordable Tree Serv.*, No. S-10-045, 2011 WL 3568375 (Ohio Ct. App. Aug. 12, 2011) (reformation of insurance contract was proper when parties were mutually mistaken as to insured's identity, even though insured's principals knew correct name of the insured business and insurer did not, because parties intended that insurer would insure the business owned by the principals)).

## II. Application of Law to Facts

**8.** The doctrine of mutual mistake applies under the circumstances of this case. As found above, both CEMCO and Mr. Coutu were mistaken as to the same basic assumption—that the Construction Contract was

entered between CEMCO and a single "Rooftop" entity. That CEMCO did not know of the existence of multiple "Rooftop" entities and was indifferent as to the precise legal name of the entity it contracted with does not mean there was no mutual mistake. *Cf. Ranch O*, 361 P.3d at 1066 (reformation was appropriate because both parties to deed mistakenly believed it correctly identified landowner as grantor that had authority to convey easement, notwithstanding fact that grantee was ignorant of actual landowner's existence when deed was entered).

**9.** Reformation of the Construction Contract will give effect to the parties' actual intentions. As found above, (1) prior to executing the Construction Contract, CEMCO and Mr. Coutu had an agreement that "Rooftop" would repair CEMCO's roof, payment would be the proceeds of CEMCO's insurance claim with Travelers plus CEMCO's deductible, and "Rooftop" would handle all the communications and negotiations with Travelers regarding the insurance claim; (2) that agreement was memorialized in the Construction Contract's price, power-of-attorney, and assignment-of-claim provisions, which do not make sense if the "Contractor" and "Assignee" are two different entities; and (3) CEMCO's intent was for Mr. Coutu to identify the precise legal name of "Rooftop" in the contract, and Mr. Coutu's intent was to identify Rooftop R&E. Mr. Coutu made a scrivener's error when he drafted the contract to refer to two different "Rooftop" entities.

**10.** Unlike in *Poly Trucking*, 93 P.3d 561 and *Woodruff v. O'Dell*, 701 P.2d 112 (Colo. App. 1985), reforming the Construction Contract will not insert a new term that was not previously contemplated and agreed to by both contracting parties. Reformation will simply correct the existing power-of-attorney and assignment-of-claim terms to effectuate the contracting parties' actual expectations. *Cf. Hatch v. Wagner*, 590 P.2d 973 (Colo. App. 1978) (it was apparent that errors in written agreement were

transcriptional mistakes in horses' registration numbers and did not represent an underlying disagreement over the identity of the horses as collateral).

**11.** The evidence clearly and unequivocally shows that the equitable remedy of reformation is appropriate under the circumstances of this case.

## CONCLUSION

It is **ORDERED** that:

Judgment will enter in favor of the plaintiffs on their claim for reformation of the Construction Contract;

All references to Rooftop Restoration, Inc. in the Construction Contract, Ex. 16, are **REFORMED** to refer to Rooftop Restoration and Exteriors, Inc., effective *nunc pro tunc* to July 28, 2017; and

Rooftop Restoration, Inc.'s alternative claims for breach of contract and violation of Colo. Rev. Stat. § 10-3-1115, Doc. 82 at 12-16, are **DISMISSED**.

DATED: January 27, 2025          BY THE COURT:

~~Daniel D.~~ Domenico
United States District Judge